NOTICE

Decision filed 10/26/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220650-U

NO. 5-22-0650

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| LEQOINNE RICE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 06-F-153 |
| | ) | |
| TINA MENEELY, formerly Tina Eppich, | ) | Honorable |
| | ) | Ramona M. Sullivan, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1 *Held*: The order of the circuit court of Champaign County is affirmed where the respondent waived her right to strict compliance of the agreed order of March 13, 2020.

¶ 2 This is a direct appeal from the circuit court of Champaign County. The respondent, Tina Meneely, appeals the trial court's finding regarding her express waiver of strict compliance and related findings regarding default, ambiguity, and attorney fees. For the reasons that follow, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4      On June 5, 2006, the petitioner, LeQoinne Rice, voluntarily acknowledged and was found to be the birth father of the minor.  On October 6, 2006, a uniform order for support was entered by the trial court.  On April 13, 2009, a petition for adjudication of indirect civil contempt was filed against the petitioner by the Illinois Department of Healthcare and Family Services (DHFS).  On July 15, 2009, the court entered an order on the petition finding that the petitioner's child support arrearage was $8681.24 as of June 14, 2009.  Several subsequent hearings were held on the matter.  On February 20, 2013, an agreed fifth modified purge order after adjudication of indirect civil contempt was filed, and on May 8, 2013, the court found that the petitioner had purged his contempt.

¶ 5      On June 30, 2015, the petitioner filed a petition to modify child support.  On December 7, 2016, the respondent filed a petition for adjudication of civil contempt alleging that the petitioner owed $53,597.78 in arrears.  The court permitted the respondent to amend her petition on contempt and allowed the petition to discover assets filed by the respondent.

¶ 6      On March 11, 2019, the respondent filed a motion for a finding of indirect civil contempt: child support.  On October 21, 2019, she also filed a motion for a finding of indirect civil contempt: fraudulent financial affidavit and failure to disclose income.  On March 13, 2020, the trial court entered an agreed order, vacating two previous hearings.  The agreed order found that, as of February 25, 2020, the petitioner's total arrearage was $83,810 and $26,541.62 in interest.  The agreed order stated that, so long as the petitioner paid $22,000 toward the arrearage by March 20, 2020, and paid $1500 per month toward

2

the remaining balance of the arrearage thereafter starting April 2020, the arrearage would be reduced to the amount of $43,000. However, according to the language of paragraph C, if the petitioner failed to make his monthly payments or the $22,000 payment, the arrearage would automatically revert back to the original amount.

¶ 7    On March 16, 2020, the Governor of Illinois issued an executive order essentially shutting down restaurants and bars and the petitioner was laid off. The petitioner failed to make a payment of $22,000 on March 20, 2020, as per the agreed order. The trial court noted that by March 21, 2020, both parties knew that it would be actually impossible for the petitioner to strictly comply with the agreed order having already missed the payment. On March 23, 2020, the petitioner's wife emailed the petitioner's counsel to inform her that he missed the payment deadline due to the COVID-19 lockdown. Petitioner's counsel responded "no problem" and the petitioner could have but did not file a motion to vacate or reconsider the agreed order. All of the attorneys who negotiated, drafted, and approved the agreed order participated in emails on March 23, 2020, regarding the past-due lump sum. By March 23, 2020, well within 30 days of the entry of the agreed order, it was known to each party and counsel representing each party that it would be impossible for the petitioner to strictly comply with the agreed order.

¶ 8    The respondent accepted the petitioner's check for $20,000, and the check cleared by March 26, 2020. The agreed order required the petitioner to make monthly payments of $1500 beginning in April 2020, which he failed to do, paying the lesser amount of $282 that month. On May 4, 2020, emails between the petitioner's and the respondent's counsel explained that they "understand the disruptions of the COVID-19 crisis" and that

3

"obviously, we need to be patient due to the crisis." While the petitioner did not make monthly payments of $1500, he did make regular and substantial payments each month. The trial court calculated that, had the petitioner paid according to the agreed order schedule, he would have paid $53,500 by the end of December 2021. His actual payments by December 2021 totaled $57,010.83. The agreed order provided that the only exception to strict compliance was an "exigent circumstance." The petitioner did not experience a medical condition that met the parties' definition of exigent circumstance and did not file a notice of exigent circumstances. Within 10 days of the entry of the agreed order, all parties and counsel were aware that the petitioner had lost his job and was receiving unemployment, all parties were aware of the extended "stay at home" orders, and all parties were aware that the petitioner had already violated the terms of the agreed order. Although the petitioner failed to strictly comply with the terms of the agreed order, the court noted that the respondent accepted the petitioner's payments, acknowledged the COVID-19 crisis, acknowledged the issues that needed to be corrected in the agreed order, and offered to be patient.

¶ 9      On March 10, 2021, the respondent filed a motion for contempt sanctions: failure to comply with agreed order. On April 29, 2021, DHFS filed a motion for aid and direction. On April 30, 2021, the trial court held a hearing on the respondent's motion for contempt sanctions. The parties agreed that a $20,000 payment had been made by the petitioner directly to the respondent. On August 17, 2021, the court held a hearing on the respondent's motion for contempt sanctions and the motion to strike response. After

hearing argument, the court denied the motion to strike and took the motion for contempt sanctions under advisement. On August 19, 2021, the court entered an order of abatement.

¶ 10 On August 23, 2021, the trial court entered an opinion and order on the motion for contempt sanctions. The court found that the terms of the agreed order entered into on March 13, 2020, were ambiguous and internally inconsistent. The court noted that, although the petitioner did not strictly comply with the terms of the agreed order, he did make a payment of $20,000 on March 25, 2020, and had made regular and substantial payments each month thereafter. The court also noted that, while the COVID-19 pandemic caused the petitioner to lose his job, the petitioner never filed a notice of exigent circumstances as required by the terms of the agreed order. Lastly, the court noted that according to DHFS records the petitioner only owed $46,000 during the relevant period but had paid $51,008.04 during said period. The court awarded reasonable attorney fees to the respondent because she incurred legal fees in bringing the matter back to court where the petitioner failed to file his notice of exigent circumstances to address his inability to strictly comply with the payment schedule. The court otherwise denied the motion for contempt sanctions because the terms of the agreed order were ambiguous, because the global pandemic affected the petitioner's ability to strictly comply with the payment schedule, and because the petitioner appeared to be ahead of the payment schedule at that time.

¶ 11 On September 17, 2021, the respondent filed a motion to reconsider her motion for sanctions. On November 3, 2021, the trial court held a hearing on the respondent's motion to reconsider. The motion to reconsider was allowed; the August 23, 2021, order was

vacated; the court reinstated the respondent's March 10, 2021, motion for contempt sanctions: failure to comply with agreed order; and the cause was continued.

¶ 12    On May 18, 2022, the trial court held a hearing on the motion for contempt sanctions and the parties were given time to file written arguments.  On September 2, 2022, the trial court entered an order providing aid and direction regarding the March 2020 agreed order. The court noted that, because the agreed order was poorly drafted, the parties provided communications to explain the intent of the negotiations.  According to the communications, the respondent agreed to reduce the balance owed in exchange for an immediate, substantial payment, full payment of the balance within 28 months, and consistent payments until the balance was paid in full.  The parties signed the agreed order on March 9, 2020.

¶ 13    The trial court iterated that a party to a contract may waive, by express agreement or by its course of conduct, its legal right to strict performance of the terms of a contract. The court found that the respondent waived the right to demand strict compliance by expressly acknowledging that the COVID-19 crisis was a reason to be patient and lulling the petitioner into believing that the agreed order was still in place even though he missed the March 20, 2020, deadline, he missed the April 2020 payment deadline, and his payments were less than the $1500 per the agreed order for six additional months in 2020. The court also found that despite the language of paragraph C in the agreed order, the conduct of the parties demonstrated that paragraph C was not essential to the agreement and the respondent therefore waived her right to demand strict compliance and trigger the consequences of paragraph C.

¶ 14 The trial court found that the parties agreed to settle the entire financial obligation for the sum of $65,000, provided the petitioner paid a lump sum of $22,000 to the respondent by March 20, 2020, and $1500 per month toward the remaining balance beginning on April 20, 2020, until paid in full. The parties further agreed that the arrearage balance would carry interest at a rate of 4% per year until the balance was paid in full, but the remaining balance of the accumulated interest created by the terms of the agreed order would be waived once the petitioner paid the principal balance in full if the petitioner complied with the terms of the agreed order. The court found that the petitioner was not entitled to a waiver of the balance of the accumulated interest because he had not fully complied with the terms of the order and compliance was required to obtain that benefit. Lastly, the court found that both parties had voluntarily incurred substantial attorney fees, which they had chosen to do since 2006.

¶ 15 The trial court therefore ordered that the motion for contempt sanctions was denied. The court specifically found that, as of February 25, 2020, the petitioner's arrearage was $62,400 pursuant to the parties' negotiations; at the time of the parties' agreement, the petitioner still owed current support payments for March 2020, April 2020, and May 2020 totaling another $2600; and the arrearage balance carried interest at the rate of 4% per year until paid in full. The court ordered each party to pay their own attorney fees. The respondent appeals.

¶ 16                               II. ANALYSIS

¶ 17 There are four issues raised on appeal. First, whether the respondent waived her right to strict performance of the trial court's March 2020 order. Second, whether the court

erred in finding that the petitioner was not in default of the March 2020 agreed order. Third, as an alternative argument, that the court should have found the agreed order void as its terms were ambiguous. Lastly, the court should have awarded reasonable attorney fees to the respondent.

¶ 18    The parties disagree as to the standard of review for these issues. The respondent argues our review is *de novo*, while the petitioner argues we should use a manifest weight of the evidence standard. Regardless, our judgment remains the same under either standard of review. We agree with and adopt the reasoning of the trial court.

¶ 19    "Waiver is either an express or implied voluntary and intentional relinquishment of a known and existing right." *Wells v. Minor*, 219 Ill. App. 3d 32, 45 (1991). As to an implied waiver, waiver of a legal right may arise when the conduct of the person against whom waiver is asserted is inconsistent with an intent to enforce said right. *Id*. "A party to a contract may not lull another into false assurance that strict compliance with a contract duty will not be required and then sue for noncompliance." *Id*. Our analysis focuses on the intent of the nonbreaching party. *Id*. Where she has intentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right, she has waived it and may not thereafter seek judicial enforcement. *Id*.

¶ 20    As discussed above and at length by the trial court, the respondent waived her right to demand strict compliance of the agreed order by expressly acknowledging that the COVID-19 crisis was a reason to be patient and lulling the petitioner into believing that the agreed order was still in place even though he missed the March 20, 2020, deadline, he

8

missed the April 2020 payment deadline, and his payments were less than the $1500 for six additional months in 2020.

¶ 21    Next, we agree with and adopt the trial court's analysis regarding the petitioner's performance under the terms of the agreed order and in finding that the petitioner was not in default of the order.  Within 10 days of the entry of the agreed order, all parties and counsel were aware that the petitioner had lost his job and was receiving unemployment, all parties were aware of the extended "stay at home" orders, and all parties were aware that the petitioner had already violated the terms of the agreed order.  Though the petitioner failed to strictly comply with the terms of the agreed order, the respondent accepted the petitioner's payments, acknowledged the COVID-19 crisis, acknowledged the issues that needed to be corrected in the agreed order, and offered to be patient.

¶ 22    Third, the respondent argues in the alternative that the trial court should have found the agreed order to be void as its terms were ambiguous.  We disagree.  The court was able to discern the intent of the parties through the use of parol evidence showing the parties' intent when entering into the agreed order, and the respondent never filed any kind of motion for relief from judgment.  The respondent cites no legal basis for the trial court to have vacated the agreed order.

¶ 23    Lastly, the respondent argues that should this court agree with her second argument raised above, then an award of attorney fees is appropriate.  As we have already discussed, we find that the petitioner was not in default and therefore need not address this final point.

9

¶ 24                            III. CONCLUSION

¶ 25    Based on the foregoing, we affirm the judgment of the circuit court of Champaign

County.


¶ 26    Affirmed.